IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-125

No. 155PA20

Filed 29 October 2021

STATE OF NORTH CAROLINA

v.

JOHN D. GRAHAM

Discretionary review allowed pursuant to N.C.G.S. § 7A-31 concerning the opinion of a divided panel of the Court of Appeals, 270 N.C. App. 478 (2020), finding no error in part and vacating and remanding in part an order entered on 13 December 2016 by Judge Eric Levinson in Superior Court, Clay County[1] and an order entered on 13 May 2019 by Judge Athena F. Brooks in Superior Court, Clay County. Heard in the Supreme Court on 26 April 2021.

*Joshua H. Stein, Attorney General, by Benjamin O. Zellinger, Special Deputy Attorney General, for the State-appellee.*

*Glenn Gerding, Appellate Defender, by Daniel Shatz, Assistant Appellate Defender, for defendant-appellant.*

MORGAN, Justice.

¶ 1    This Court has limited its allowance of defendant's petition for discretionary

---

[1] The Court of Appeals judge who rendered an opinion "concurring in part and dissenting in part" did not disagree with the lower appellate court's majority opinion concerning the subject of our opinion here. *See State v. Graham*, 270 N.C. App. 478, 502 (2020) (Bryant, J., concurring in part and dissenting in part). As a result, this Court afforded discretionary review to the issue addressed herein so as to be able to consider it.

review to a single issue addressed by the Court of Appeals which defendant contends that the lower appellate court decided in error. Pertinent to our election to review this case is defendant's argument that the Court of Appeals either improperly applied or disregarded the appropriate test for determining whether a defendant's out-of-state conviction may be counted as an elevated felony classification for purposes of sentencing in North Carolina trial courts as announced in *State v. Sanders*, 367 N.C. 716 (2014). Because we believe that the Court of Appeals majority, with which the lower appellate court's dissenting opinion agreed, properly applied the comparative elements test in affirming the trial court's consideration of defendant's conviction in the state of Georgia for statutory rape as equivalent to a North Carolina Class B1 felony for the purpose of the calculation of prior record level points in criminal sentencing, we affirm the Court of Appeals determination and find no error.

## I.    Factual and Procedural Background

Defendant was indicted on four counts each of sexual offense with a child by an adult and taking indecent liberties with a child by a Clay County grand jury on 11 September 2012. Defendant's trial began on 5 December 2016. The victim in the case, A.M.D.,[2] testified that on multiple occasions when she was seven to eight years old, defendant inappropriately touched her private areas and digitally penetrated her

---

[2] The juvenile victim's initials are used to obscure her identity in an effort to protect the victim's privacy.

vagina. At the close of the State's evidence, the State voluntarily dismissed all four counts of taking indecent liberties with a child, and the trial court submitted the remaining four counts of sexual offense with a child by an adult to the jury after both parties had ended their respective presentations. On 9 December 2016, the jury returned a verdict of guilty on one count of sexual offense with a child by an adult, and found defendant not guilty as to the three remaining charges. The trial court continued sentencing until the following week.

At the sentencing hearing on 13 December 2016, the State tendered to the trial court defendant's conviction on 21 March 2001 for statutory rape in Georgia,[3] as well as defendant's more recent conviction on 9 April 2015 for escaping a local jail in Clay County, for consideration by the trial court in its calculation of defendant's prior record level. In compliance with the regular procedure for trial courts in North Carolina, the trial court in this case utilized a standardized AOC-CR-600B form to determine, under a structured sentencing statutory framework, the manner in which defendant's prior convictions would affect the length of active time that defendant would serve for his single Class B1 felony conviction in violation of North Carolina law for the commission of sexual offense with a child by an adult. The trial court

---

[3] The record reflects that the victim in defendant's 2001 conviction for statutory rape in Georgia was the mother of A.M.D. It appears that after defendant was released from the active term that he was serving for the Georgia conviction, defendant absconded probation with the assistance of A.M.D.'s mother, and was invited by A.M.D.'s mother to reside with her and A.M.D.

treated defendant's Georgia statutory rape conviction as a Class B1 felony—which garnered defendant nine prior record points for sentencing purposes—because the trial court regarded the Georgia statute under which defendant was convicted as similar to North Carolina's own statutory rape statute. In the event that the trial court had classified defendant's Georgia conviction in the lower felony class level of Class I, which was an option available to the trial court, then defendant would have been assigned only two prior record points for the Georgia conviction as the trial court determined defendant's sentence for his perpetration of the North Carolina criminal offense of sexual offense with a child by an adult. Combined with one point assigned for defendant's previous escape conviction, defendant was assigned a total of ten prior record level points for sentencing purposes, which automatically categorized him as a Level IV offender for sentencing determinations. On the other hand, if the trial court had declined to find substantial similarity between the Georgia and North Carolina statutes at issue, then defendant would have received a total of only three prior record level points which would have classified him as a prior record Level II offender under North Carolina's structured sentencing guidelines. In sentencing defendant within the parameters of prior record Level IV, the trial court entered a judgment of 335 to 462 months of active time of incarceration for defendant. Defendant appealed, and the Court of Appeals panel held that the trial court did not err as to finding substantial similarity between the Georgia and North Carolina

statutes.

## II. Analysis

On 21 March 2001, defendant was found guilty of the offense of statutory rape

in the state of Georgia. He was determined to have violated section 16-6-3 of the

Official Code of Georgia Annotated, which read as follows at the time of defendant's

conviction under the Georgia statute:

> (a) A person commits the offense of statutory rape when he
> or she engages in sexual intercourse with any person under
> the age of 16 years and not his or her spouse, provided that
> no conviction shall be had for this offense on the
> unsupported testimony of the victim.
>
> (b) A person convicted of the offense of statutory rape shall
> be punished by imprisonment for not less than one nor
> more than 20 years; provided, however, that if the person
> so convicted is 21 years of age or older, such person shall
> be punished by imprisonment for not less than ten nor
> more than 20 years; provided, further, that if the victim is
> 14 or 15 years of age and the person so convicted is no more
> than three years older than the victim, such person shall
> be guilty of a misdemeanor.

Ga. Code Ann. § 16-6-3 (2001). Expanded into its component parts, the Georgia

statute results in a felony conviction if a defendant (1) engages in sexual intercourse

(2) with any person (3) under sixteen years of age (4) who is not the defendant's

spouse, (5) unless the victim is fourteen or fifteen years of age and the defendant is

no more than three years older than the victim.[4] Ga. Code Ann. § 16-6-3. If the victim

---

[4] In the case at bar, defendant's Georgia conviction was a felony offense.

is fourteen or fifteen years old and the defendant is within three years in age of the victim, then the defendant is guilty of a misdemeanor. *Id.*

¶ 5        Comparably, section 14-27.25 of the General Statutes of North Carolina stated the following at the time that the trial court in defendant's matter at issue conducted the sentencing hearing in the present case on 13 December 2016:

> (a) A defendant is guilty of a Class B1 felony if the defendant engages in vaginal intercourse with another person who is 15 years of age or younger and the defendant is at least 12 years old and at least six years older than the person, except when the defendant is lawfully married to the person.
>
> (b) Unless the conduct is covered under some other provision of law providing greater punishment, a defendant is guilty of a Class C felony if the defendant engages in vaginal intercourse with another person who is 15 years of age or younger and the defendant is at least 12 years old and more than four but less than six years older than the person, except when the defendant is lawfully married to the person.

N.C.G.S. § 14-27.25 (2015). The elements of the North Carolina statute require the State to prove that a defendant (1) engaged in vaginal intercourse (2) with another person (3) fifteen years of age or younger (4) who is not the defendant's spouse, (5) provided that the defendant is at least twelve years of age at the time of the offense and (6) at least six years older than the victim to constitute a Class B1 violation of N.C.G.S. § 14-27.25(a), and less than six years older but more than four years older than the victim to constitute a Class C violation of N.C.G.S. § 14-27.25(b). N.C.G.S. §

14-27.25.

¶ 6 In calculating a defendant's prior record level, a trial court must determine whether the statute under which a defendant was convicted in another state is substantially similar to a statute of a particular felony in North Carolina, which the State must show by a preponderance of the evidence. Subsection 15A-1340.14(e) states in pertinent part:

> Except as otherwise provided in this subsection, a conviction occurring in a jurisdiction other than North Carolina is classified as a Class I felony if the jurisdiction in which the offense occurred classifies the offense as a felony . . . . *If the State proves by the preponderance of the evidence that an offense classified as . . . a felony in the other jurisdiction is substantially similar to an offense in North Carolina that is classified as a Class I felony or higher, the conviction is treated as that class of felony for assigning prior record level points.*

N.C.G.S. § 15A-1340.14(e) (2019) (emphasis added).

¶ 7 We adopt the correctness of determinations made by the Court of Appeals that "whether an out-of-state offense is substantially similar to a North Carolina offense is a question of law," *State v. Hanton*, 175 N.C. App. 250, 254 (2006), and "the requirement set forth in N.C. Gen. Stat. § 15A-1340.14(e) is not that the statutory wording precisely match, but rather that the offense be 'substantially similar,' " *State v. Sapp*, 190 N.C. App. 698, 713 (2008). "We review questions of law de novo." *State v. Khan*, 366 N.C. 448, 453 (2013).

¶ 8 In the instant case, the trial court evaluated defendant's conviction of statutory

rape in the state of Georgia to be commensurate with a Class B1 felony in North Carolina for sentencing purposes in the present case and hence, in assigning points for prior convictions, accorded nine points to the Georgia conviction. We agree with the determination of the lower appellate court, to which defendant appealed the trial court outcomes, "that the trial court did not err in finding the two offenses substantially similar" as Ga. Code Ann. § 16-6-3 outlaws statutory rape of a person who is under the age of sixteen and N.C.G.S. § 14-27.25 prohibits statutory rape of a person who is fifteen years of age or younger.[5] *State v. Graham*, 270 N.C. App. 478, 496 (2020).

¶ 9   Each of the statutes includes an express reference to the act of physical intercourse between the perpetrator of the offense and the victim; Georgia utilizes the phrase "engages in sexual intercourse" and North Carolina employs the terminology "engages in vaginal intercourse." Both statutes employ nearly identical language that the act of physical intercourse is conducted by the perpetrator with another person and that the other person is not the offender's spouse by virtue of a lawful marriage. The variations between the two statutes arise in the areas of the

---

[5] While the Court of Appeals recognized that "the State failed to meet its burden of proof" due to the State's failure to introduce a copy of the Georgia statute into evidence despite the provision of the foreign enactment to the trial court for review, nonetheless the lower appellate court determined that this omission constituted harmless error because "the record contains enough information for us to review the trial court's determination that the Georgia and North Carolina offenses were substantially similar." *Graham*, 270 N.C. App. at 491–92. Defendant does not challenge this determination by the Court of Appeals in the current appeal to us.

age of the statutory rape victim—Georgia, "under the age of 16 years," and North Carolina, "15 years of age or younger"—and the age difference between the two participants which impacts the perpetrator's degree of punishment—Georgia, "[a] person convicted of the offense of statutory rape shall be punished by imprisonment for not less than one nor more than 20 years; provided, however, that if the person so convicted is 21 years of age or older, such person shall be punished by imprisonment for not less than ten nor more than 20 years; provided, further, that if the victim is 14 or 15 years of age and the person so convicted is no more than three years older than the victim, such person shall be guilty of a misdemeanor," Ga. Code Ann. § 16-6-3, and North Carolina, "[a] defendant is guilty of a Class B1 felony if the defendant engages in vaginal intercourse with another person who is 15 years of age or younger and the defendant is at least 12 years old and at least six years older than the person . . . [and] a defendant is guilty of a Class C felony if the defendant engages in vaginal intercourse with another person who is 15 years of age or younger and the defendant is at least 12 years older and more than four but less than six years older than the person," N.C.G.S. § 14-27.25.

¶ 10        Defendant argues that the Georgia statutory rape statute and the North Carolina statutory rape statute are not substantially similar in addressing the criminal offenses which they respectively prohibit in that there is no age difference element in the Georgia law, because unlike the North Carolina law which identifies

specific age differences in its felony classifications, defendant notes that "the Georgia statute applies equally to all persons under the age of 16 years." He expounds upon this "lack of an age difference element in the Georgia statutory rape statute" by offering hypothetical examples of sexual intercourse which he posits would constitute the offense of statutory rape in Georgia but would not constitute the offense of statutory rape in North Carolina. Defendant submits that in a comparison of a North Carolina statute with another state's statute in order to determine substantial similarity between the two, if the difference between the two statutes renders the other state's law narrower or broader, "or if there are differences that work in both directions, so that each statute includes conduct not covered by the other, then the two statutes will not be substantially similar for purposes of the statute." Additionally, defendant asserts that the Georgia law under examination here is not substantially similar to the North Carolina enactment to which it is being paralleled because the Georgia law can be violated "by conduct that is only a Class C felony . . . in North Carolina." Defendant's arguments are unpersuasive.

¶ 11    Defendant's position conflates the requirement that statutes subject to comparison be substantially similar to one another with his erroneous perception that the two statutes must have identicalness to each other. As we previously noted in our recognition of *Sapp*, 190 N.C. App. at 713, the statutory wording of the Georgia provision and the North Carolina provision do not need to precisely match in order to

be deemed to be substantially similar. Likewise, defendant's stance that the Georgia statute and the North Carolina statute cannot be considered to be substantially similar because not every violation of the Georgia law would be tantamount to the commission of a Class B1 felony under the comparative North Carolina law is unfounded. In applying N.C.G.S. § 15A-1340.14(e) to the case sub judice, since the Georgia offense of statutory rape "is substantially similar to an offense in North Carolina that is classified as a Class I felony or higher"—here, a Class B1 felony under N.C.G.S. § 14-27.25(a)—then defendant's conviction of statutory rape in the state of Georgia is treated as a Class B1 felony conviction for the assignment of the appropriate number of prior record level points. Accordingly, the trial court in the instant case correctly ascertained the figure of nine points for felony sentencing purposes for defendant's commission of the Georgia offense of statutory rape for which defendant was convicted on 21 March 2001.

¶ 12    The dissent's view suffers from the same foundational flaw that is exhibited by defendant's stance on the pivotal resolution of the question as to whether the statutes at issue are substantially similar to one another. Although our learned colleagues who would reach a different outcome in this case join defendant in confusing the legal concept of "substantially similar" with the aspect of identicalness, the dissenters further compound their unfortunate jumble of the two different measures by expanding the scope of "substantially similar" toward a requirement of exactitude.

Standing alone, neither word—"substantially" or "similar"—connotes literalness; therefore, when these words are combined to create the legal term of art "substantially similar," this chosen phraseology reinforces the lack of a requirement for the statutory language in one enactment to be the same as the statutory language in another enactment in order for the two laws to be treated as "substantially similar." Yet, the dissent here—despite the obvious essential pertinent parallels between the Georgia statute and the North Carolina statute—would withhold a recognition that the two statutes are substantially similar because *all* of the same provisions are not common to each of them. In this respect, although the dissent professes that it understands the difference between "substantially similar" and identicalness, nonetheless it appears that the dissent is so ensnared and engulfed by a need to see a mirrored reflection mutually cast between the two statutes that the dissent is compelled to promote this erroneously expansive approach.

¶ 13     With our agreement with the view of the Court of Appeals that the trial court did not err in finding that the two offenses which the Georgia statute and the North Carolina statute respectively proscribed were substantially similar, this outcome comports with our decision in *Sanders*, 367 N.C. 716. In *Sanders*, this Court reviewed the criminal offense of the state of Tennessee known as "domestic assault" and the North Carolina offense of assault on a female. The *Sanders* defendant was found by a jury to be guilty of robbery with a dangerous weapon, and the trial court examined

the defendant's prior convictions during the trial's sentencing phase for the purpose of establishing the defendant's sentencing points. His prior convictions included the Tennessee offense of domestic assault.

¶ 14     We noted in *Sanders* that the Court previously "ha[d] not addressed the comparison of out-of-state offenses with North Carolina offenses for purposes of determining substantial similarity under N.C.G.S. § 15A-1340.14(e)." 367 N.C. at 718. In this case of first impression, this Court held that "[d]etermination of whether the out-of-state conviction is substantially similar to a North Carolina offense is a question of law involving comparison of the elements of the out-of-state offense to those of the North Carolina offense." *Id.* at 720 (alteration in original) (quoting *State v. Fortney*, 201 N.C. App. 662, 671 (2010)). In devising a "comparison of the elements" test, this Court expressly rejected the State's argument in *Sanders* "to look beyond the elements of the offenses and consider (1) the underlying facts of defendant's out-of-state conviction, and (2) whether, considering the legislative purpose of the respective statutes defining the offenses, the North Carolina offense is 'suitably equivalent' to the out-of-state offense." *Id.* at 719. The Court's implementation of its announced "comparison of the elements" test compelled us to determine that the Tennessee offense of domestic assault and the North Carolina offense of assault on a female were not substantially similar, in that the disparity in the elements of the two offenses regarding the genders of the parties involved and the status of their

relationships rendered the Tennessee and North Carolina offenses legally incomparable to one another for purposes of the determination of prior record level points. *Id.* at 721.

¶ 15     In attempting to equate the statutes at issue in *Sanders* with the statutes being evaluated in the present case, the dissent demonstrates its misunderstanding of the application of *Sanders* and its misinterpretation of the term "substantially similar." The dissent sees no meaningful difference, for purposes of the determination of "substantially similar" statutes, between 1) a one-year difference in the age of early teenagers who are victims and 2) specified age difference delineations between victims and offenders in the instant case, and 1) a total elimination of one gender from the ability to offend and 2) the relationship status of victims and offenders in *Sanders*. In fixating on the exactness of the terminology of the respective statutes being compared in each of the two cases and corresponding potential outcomes which might be yielded in specific fact pattern scenarios which could arise in each state, the dissent promotes a widened view of "substantially similar" which would wrongly extend this Court's holding in *Sanders* to require identicalness between compared statutes from different states and mandate identical outcomes between cases which originate both in North Carolina and in the foreign state. Such requirements would be inconsistent with our analysis in *Sanders*, the cited principles which we utilize from the Court of Appeals cases of *Hanton* and *Sapp*, and the proper construction and

application of the concept of "substantially similar."

¶ 16 Despite the dissent's concerns, we understand that it is unwise to endeavor to articulate a "bright-line rule" to govern a determination of whether a North Carolina statute is "substantially similar" to a statute from another state. While the dissent would establish such a standard with a test of identicalness, this guide is erroneous as well as incompatible with the concept of the identification of whether enactments of law are "substantially similar." There are so many iterations of so many similar laws written in so many different ways, in North Carolina and in the forty-nine other states in America, that the courts of this state must necessarily possess the ability to operate with the flexibility that the phrase "substantially similar" inherently signifies in determining whether statutes which are being compared share the operative elements in the evaluation. While such an exercise is predictably challenging, we are confident that the courts of this state have sufficient guidance and flexibility to properly conduct the prescribed analysis of the statutes' respective elements.

¶ 17 In applying the "comparison of the elements" test articulated in *Sanders* to the present case, the harmonious determinations of the trial court and the Court of Appeals here are consistent with our view that the Georgia statutory rape offense prohibited by Ga. Code Ann. § 16-6-3 and the North Carolina statutory rape offense forbidden by N.C.G.S. § 14-27.25(a) are substantially similar. Just as the State in *Sanders* was unsuccessful in its assertion that a court's determination of whether two

statutes are "substantially similar" should be premised on considerations other than the statute's elements, defendant is unsuccessful here in his argument that is contrary to the cited statutory and case law, while being incongruous with the "comparison of the elements" test which supports the conclusion that the Georgia and North Carolina offenses at issue are substantially similar for purposes of the computation of defendant's prior record level points for sentencing.

### III.    Conclusion

¶ 18        The Georgia statutory rape statute under which defendant was previously convicted was substantially similar to North Carolina's statutory rape statute so as to authorize the trial court to regard defendant's conviction of the offense of statutory rape in the state of Georgia as a Class B1 felony offense for purposes of determining defendant's prior record level points for sentencing purposes. The trial court did not err in this determination, and the Court of Appeals was correct in its subsequent determination to affirm the trial court on this sole issue which we have addressed upon discretionary review.

AFFIRMED.

Justice Earls dissenting.

An out-of-state statute is not "substantially similar" to a North Carolina statute within the meaning of N.C.G.S. § 15A-1340.14(e) if conduct that is proscribed by the out-of-state statute is lawful under the North Carolina statute. That was the substance of the elements-based approach to comparing criminal statutes we articulated in *State v. Sanders*, 367 N.C. 716 (2014). Despite its protestations to the contrary, the majority does not adhere to *Sanders*. The resulting decision fails to "giv[e] fair and clear warning" to the public of the consequences of engaging in criminal conduct, *United States v. Lanier*, 520 U.S. 259, 271 (1997), and construes N.C.G.S. § 15A-1340.14(e) in a way that likely "fail[s] to meet constitutional standards for definiteness and clarity," *Kolender v. Lawson*, 461 U.S. 352, 361 (1983). Because the majority's analysis will not yield an "evenhanded, predictable, or consistent" application of N.C.G.S. § 15A-1340.14(e), *Johnson v. United States*, 576 U.S. 591, 606 (2015), I respectfully dissent.

## I.   The majority's decision is in tension with *Sanders*

In this case, the Georgia statute that the defendant, John D. Graham, violated is not "substantially similar" to any Class B1 felony provided by North Carolina law. This conclusion necessarily follows from any fair reading of *Sanders*.

In *Sanders*, this Court considered whether a Tennessee statute prohibiting individuals from assaulting any "domestic abuse victim," Tenn. Code Ann. § 39-13-111(b) (2009), was "substantially similar" to the North Carolina statutory offense of

assaulting a female, N.C.G.S. § 14-33(c)(2) (2013). We held that it was not. Our reasoning was straightforward. Under the Tennessee statute, an individual was guilty of the specified offense if the person assaulted someone who fell within one of six defined categories of "domestic abuse victims." None of these categories contained the requirement found in N.C.G.S. § 14-33(c)(2) that "the victim . . . be female [and] the assailant . . . be male and of a certain age." *Sanders*, 367 N.C. at 720. Thus,

> a woman assaulting her child or her husband could be convicted of "domestic assault" in Tennessee, but could not be convicted of "assault on a female" in North Carolina. A male stranger who assaults a woman on the street could be convicted of "assault on a female" in North Carolina, but could not be convicted of "domestic assault" in Tennessee.

*Id.* at 721. This Court unanimously agreed that because the defendant could have been convicted under the Tennessee statute for conduct that would not have been criminal under the North Carolina statute, the two statutes were not "substantially similar." *Id.*

¶ 22        *Sanders* yielded two principles which should dictate the outcome of this case. The first principle is that "[d]etermination of whether the out-of-state conviction is substantially similar to a North Carolina offense is a question of law involving comparison of the elements of the out-of-state offense to those of the North Carolina offense." *Id.* at 720 (alteration in original) (quoting *State v. Fortney*, 201 N.C. App. 662, 671 (2010)). Accordingly, when ascertaining whether two statutes are substantially similar, we look only to the statutory elements of the offense, not to the

factual underpinnings of the defendant's convictions.

¶ 23         The second principle is that an out-of-state criminal statute is not substantially similar to a North Carolina criminal statute if a defendant could be convicted under the out-of-state statute for acts which would not be criminal (or not criminal at the same offense level) if committed in North Carolina. Adherence to this principle is necessary to faithfully implement the elements-based approach. When all of the conduct targeted by an out-of-state statute is encompassed within the North Carolina statute it is being compared to, there is no doubt that the defendant has committed an offense which would garner the same number of prior record level points had the defendant engaged in the proscribed conduct in North Carolina. A defendant who previously committed an act giving rise to an out-of-state criminal conviction will never be sentenced more harshly than a similarly situated defendant who previously committed the exact same act in North Carolina. Further, the facts underlying the defendant's out-of-state conviction are made irrelevant—whatever the defendant did to earn his or her out-of-state conviction, his or her conduct would necessarily violate the North Carolina statute it is being compared to.

¶ 24         The elements-based approach adopted in *Sanders* is not difficult to apply. That is, or was, its primary virtue. In this case, applying *Sanders*' correct interpretation of N.C.G.S. § 15A-1340.14(e) dictates that Graham's prior conviction in Georgia should be treated as a Class I felony for purposes of sentencing. The Georgia statute Graham

was convicted under, Ga. Code Ann. § 16-6-3 (2001), indisputably encompasses conduct which is not a Class B1 felony in North Carolina. If an eighteen-year-old individual has sexual intercourse with a fourteen-year-old in Georgia, that person has violated Ga. Code Ann. § 16-6-3. If an eighteen-year-old individual has sexual intercourse with a fourteen-year-old in North Carolina, that person has not violated any statute creating a Class B1 felony offense in this state that existed at the time Mr. Graham was convicted of his offense in Georgia. *See* N.C.G.S. § 14-27.7A(a) (2001) (making it a Class B1 felony "if . . . defendant engages in vaginal intercourse or a sexual act with another person who is 13, 14, or 15 years old and . . . defendant is at least six years older than the person"); N.C.G.S. § 14-27.2A(a) (2001) (making it a Class B1 felony "if the [defendant] is at least 18 years of age and engages in vaginal intercourse with a victim who is a child under the age of 13 years"); N.C.G.S. § 14-27.2(a) (2001) (making it a Class B1 felony "if the person engages in vaginal intercourse . . . [w]ith a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim"). Under *Sanders*, we should stop there.

Whatever the majority says it is doing in extending beyond this point, it is not applying *Sanders*. The point of the elements-based approach is not to engage in a subjective, qualitative assessment of the substance of two criminal offenses. The point is to enable a court to convert an out-of-state offense into an in-state offense for

sentencing purposes, without needing to resort to an independent inquiry into the factual circumstances of a defendant's prior out-of-state conviction, and without creating the risk that a defendant who previously engaged in criminal conduct in another state will be sentenced differently than a similarly situated defendant who engaged in the same conduct in North Carolina.

The fact that Ga. Code Ann. § 16-6-3 generally targets the same kind of conduct as some North Carolina Class B1 felony offenses does not make the statute "substantially similar" under N.C.G.S. § 15A-1340.14(e). It is improper to sentence a defendant based upon our own intuition that most of the conduct prohibited by an out-of-state statute would also be prohibited by an analogous North Carolina statute. *Cf. United States v. Davis*, 139 S. Ct. 2319, 2326 (2019) ("[T]he imposition of criminal punishment can't be made to depend on a judge's estimation of the degree of risk posed by a crime's imagined 'ordinary case.' "). Squinting at two statutes and saying "close enough" is not, in this context, good enough. The majority's freewheeling approach is an invitation to unchecked judicial discretion. As a result, some defendants will inevitably be sentenced as if they had previously committed more serious offenses than they actually committed.

The majority is also wrong to suggest that faithful application of the elements-based approach reflects an "erroneous perception that the two statutes must have identicalness to each other." No one disputes that "substantially similar" does not

mean "identical." However, the rule articulated in *Sanders* in no way requires the State to prove that an out-of-state statute is a carbon copy of the North Carolina statute it is being compared to.

¶ 28　　Two criminal statutes may contain the same elements yet utilize different statutory language or be structured in different ways. For example, a hypothetical out-of-state statute which makes it a crime to intentionally use physical force to harm or threaten a female person, provided that the perpetrator is a male above the age of majority, would be substantially similar to N.C.G.S. § 14-33(c)(2), which makes it a crime for a "male person at least 18 years of age" to "[a]ssault[ ] a female." The statutes would not be identically worded, but they would be substantially similar because both would require the State to prove the same elements in order to convict a defendant.

¶ 29　　Similarly, two criminal statutes may contain different elements but still be substantially similar if all of the conduct proscribed by the out-of-state statute is proscribed by the North Carolina statute it is being compared to. A hypothetical out-of-state statute which makes it a crime to intentionally use physical force to harm or threaten a female person under the age of 12, provided that the perpetrator is a male at least twenty years old, would be substantially similar to N.C.G.S. § 14-33(c)(2), even though the statutes would not contain exactly the same elements, because anyone convicted under the out-of-state statute would necessarily have engaged in

conduct proscribed by N.C.G.S. § 14-33(c)(2). *Sanders* gave full effect to every word the legislature chose to include in N.C.G.S. § 15A-1340.14(e). We should in turn give full effect to a unanimous decision interpreting the statute, rather than depart from its well-reasoned principles.

## II. The majority's reasoning creates substantial uncertainty for lower courts and criminal defendants

¶ 30        The majority eschews the elements-based approach we established in *Sanders*, but it is not entirely clear what has been offered as a replacement. As the majority acknowledges, the Georgia and North Carolina statutes at issue in this case vary "in the areas of the age of the statutory rape victim" and in "the age difference between the two participants which impacts the perpetrator's degree of punishment." Further, the majority does not dispute that an individual could engage in conduct which "would constitute the offense of statutory rape in Georgia but would not constitute the offense of statutory rape in North Carolina." Nevertheless, the majority cursorily dismisses Graham's position that the statutes are not substantially similar as "unfounded." According to the majority, the State should prevail here because "[e]ach of the statutes includes an express reference to the act of physical intercourse between the perpetrator of the offense and the victim," and the two statutes "employ nearly identical language that the act of physical intercourse is conducted by the perpetrator with another person and that the other person is not the offender's spouse by virtue of a lawful marriage."

¶ 31        Of course, nearly the same could be said for the statutes at issue in *Sanders*. Both of those statutes criminalized the same kind of violent conduct directed against statutorily defined category of victims. In *Sanders*, we held that two statutes were *not* substantially similar because each targeted conduct directed towards distinct classes of persons—"domestic abuse victims" under the Tennessee statute, "females" under the North Carolina statute. Here, the majority holds that the two statutes *are* substantially similar even though they target conduct directed towards distinct classes of persons—anyone under the age of sixteen who is not the perpetrator's spouse under the Georgia statute, anyone under the age of fifteen who is not the perpetrator's spouse and who is at least six years younger than the perpetrator under the North Carolina statute. The majority leaves lower courts, criminal defendants, and the public guessing as to why the distinctions we found dispositive in *Sanders* are irrelevant here.

¶ 32        The majority's unwillingness to articulate a clear legal rule, or even a squishier but still bounded multifactor test, is not only in tension with *Sanders*. It also creates a significant risk of rendering N.C.G.S. § 15A-1340.14(e) unconstitutionally vague. Under the majority's interpretation of N.C.G.S. § 15A-1340.14(e), an individual with a prior out-of-state conviction has no real way of knowing how they will be sentenced

if they violate a North Carolina statute.[1] If the elements of the out-of-state criminal statute are in any way different than the elements of the North Carolina criminal statute it is being compared to, an individual will be tasked with speculating as to whether the elements are different enough to make the statutes not substantially similar, without any meaningful guidance from this Court. The United States Supreme Court has long held that precisely this kind of uncertainty is inconsistent with due process rights. *See, e.g.*, *United States v. Batchelder*, 442 U.S. 114, 123 (1979) ("[V]ague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute.").

As a practical matter, the majority's amorphous reasoning will confer upon trial courts increased discretion to determine whether two statutes are or are not substantially similar based solely upon their own judgment. There are some matters which should be left entirely to the discretion of a trial court, but determining how many prior record level points should be assessed for an out-of-state conviction is not one of them. The majority's "grant of wholly standardless discretion to determine the

---

[1] The majority claims that holding the two statutes at issue in this case to be not substantially similar would ignore "the obvious essential pertinent parallels" between them. I acknowledge that the two statutes at issue here share some similarities, but the majority's reasoning does not yield any principled way of discerning whether two statutes which share some similarities are or are not substantially similar within the meaning of N.C.G.S. § 15A-1340.14(e). The majority does not explain which elements are "essential" and "pertinent" and which are not, nor does the majority explain how closely the elements must "parallel" each other for two statutes to be substantially similar. Even if the outcome the majority reaches could be justified under N.C.G.S. § 15A-1340.14(e), the reasoning the majority deploys fails to provide necessary guidance to lower courts and future litigants.

severity of punishment appears inconsistent with due process." *Bankers Life & Cas. Co. v. Crenshaw*, 486 U.S. 71, 88 (1988); *see also Johnson*, 576 U.S. at 602 ("Invoking so shapeless a provision to condemn someone to prison . . . does not comport with the Constitution's guarantee of due process."). *Sanders* circumscribed this discretion by requiring trial courts to conduct an objective analysis which yielded predictable results. The majority's new approach places N.C.G.S. § 15A-1340.14(e) on much shakier constitutional ground.

¶ 34        What does remain clear after today is that a court is never permitted to engage in an examination of the factual underpinnings of a defendant's out-of-state conviction. As the United States Supreme Court cautioned when it adopted something akin to the elements-based approach in the context of interpreting the Armed Career Criminal Act, 18 U.S.C. § 924, "the practical difficulties and potential unfairness of a factual approach are daunting." *Taylor v. United States*, 495 U.S. 575, 601 (1990). Practically, it is unclear what sources a court would be permitted to draw from when attempting to determine whether the facts giving rise to the defendant's out-of-state conviction would have constituted an in-state criminal offense at the same level. In at least some cases—especially those resolved by plea bargain—the factual basis for the defendant's out-of-state conviction might be impossible to surmise. Legally, because the court's inquiry into the factual basis for an out-of-state conviction could lead to enhanced criminal punishment, a defendant's Sixth

Amendment rights would necessarily be implicated. *See, e.g.*, *Blakely v. Washington*, 542 U.S. 296, 303 (2004) (explaining that a defendant's Sixth Amendment rights are violated if the court imposes an increased sentence based upon "facts supporting [a] finding [that] were neither admitted by [the defendant] nor found by a jury"). Accordingly, although the majority departs from the approach we endorsed in *Sanders* in critical ways, nothing in today's decision gives license to trial courts to sentence criminal defendants based upon ad hoc inquiries into the circumstances of their out-of-state convictions, a practice which would be akin to constitutionally dubious "collateral trials." *Shepard v. United States*, 544 U.S. 13, 23 (2005).

III.   **The majority's interpretation of the phrase "substantially similar" is in tension with the structure and purpose of N.C.G.S. § 15A-1340.14(e)**

At its core, this case involves a question of statutory interpretation: What did the General Assembly intend when it chose the phrase "substantially similar" in N.C.G.S. § 15A-1340.14(e)? The majority contends that the legislature did not intend for courts to treat statutes as substantially similar only when "the statutory wording precisely match[es]." True, but the structure of the provision at issue makes clear that finding two statutes to be "substantially similar" is an exception to the baseline rule, rather than the expected outcome every time a criminal defendant has a prior out-of-state conviction. Subsection § 15A-1340.14(e) provides that "[e]*xcept as otherwise provided in this subsection*, a conviction occurring in a jurisdiction other than North Carolina is classified as a Class I felony if the jurisdiction in which the

offense occurred classifies the offense as a felony." (Emphasis added.) The majority's reasoning threatens to make a finding of substantial similarity the default, in contrast to clear legislative intent. *See, e.g.*, *State v. Hogan*, 234 N.C. App. 218, 228 (2014) ("[I]f the State establishes that the defendant has an out-of-state felony conviction, *it is by default considered a Class I felony . . . .*").

¶ 36        Moreover, it is worth noting that the majority's reasoning cuts both ways: It is often a defendant who has been convicted of an offense categorized as a felony in another state who invokes N.C.G.S. § 15A-1340.14(e) in an effort to prove that the out-of-state felony offense is actually "substantially similar" to a North Carolina misdemeanor. N.C.G.S. § 15A-1340.14(e) ("*If the offender proves by the preponderance of the evidence* that an offense classified as a felony in the other jurisdiction is substantially similar to an offense that is a misdemeanor in North Carolina, the conviction is treated as that class of misdemeanor for assigning prior record level points." (emphasis added)); *see also Hogan*, 234 N.C. App. at 229 (treating a New Jersey conviction as a Class I felony because the "defendant failed to show that [felony] third degree theft in New Jersey is substantially similar to a North Carolina misdemeanor"). Thus, by removing any reliable and clear standard for a movant to prove that two statutes are substantially similar, the majority's reasoning guarantees both that individuals whose conduct would not be felonious under North Carolina law will more haphazardly be sentenced as if they had committed a felony and that

individuals whose conduct would have been felonious under North Carolina law will more haphazardly be sentenced as if they had committed misdemeanors. This outcome stands in stark contrast to the design of a statute plainly intended to ensure that criminal defendants in North Carolina with prior out-of-state convictions are sentenced at parity with criminal defendants in North Carolina with prior in-state convictions.

## IV.    Conclusion

Our Court does not seek to fashion clear legal rules (solely) because we are lawyers who, by nature and by training, tend to be persnickety. First and foremost, we strive for clarity because the force and legitimacy of law depends in no small part on its comprehensibility and predictability. Ambiguous laws are susceptible to unequal application under the guise of judicial discretion. The need for certainty is especially pronounced when interpreting statutes imposing criminal sanctions. *See, e.g.*, *Clark's Charlotte, Inc. v. Hunter*, 261 N.C. 222, 233 (1964) (explaining that a statute may be unconstitutionally vague if it fails to "warn people of the criminal consequences of certain conduct"); *Johnson*, 576 U.S. at 597 (holding a provision of 18 U.S.C. § 924 unconstitutional because it "leaves grave uncertainty about how to estimate the risk posed by a crime"). The majority's decision to trade *Sanders*' clear legal rule for a Delphic muddle disserves these constitutional interests and produces an interpretation of a statute at odds with legislative intent. Therefore, I respectfully

dissent.

Justice ERVIN joins in this dissenting opinion.